with the attorney assented to the location of the ground, accepted a deed and took possession accordingly, and continued his agency after the lessors of the plaintiff arrived at full age, and the defendants purchased before the lessors of the plaintiff disavowed the acts of their agent, and before the defendants had any knowledge of their intention to do so, and no such notice was given by Jones, although public sale of the adjacent lots was made, the lessor of the plaintiffs cannot recover." This instruction is refused for the reasons above given. Mrs. Harmer had no power to appoint Jones an agent to act for the heirs; her powers, as natural guardian were, at most, very limited, and did not extend to the management of the estate of her minor children. The fourth and fifth instructions asked are also refused. It is unnecessary to repeat these instructions, as they are both answered by the want of power in Jones, as an agent, to bind the lessors of the plaintiff; and the fact that Stone acquired no title either legal or equitable to these lots, by his purchase of them, or a part of them, at the sheriff's sale; consequently his release to Kirby, as well as his release to the lessors of the plaintiff, compose no part of the title relied on by the complainants. Stone having acquired no title, could release none by the conveyances executed. Under these instructions the jury found the defendants guilty, and a judgment was rendered for the lessors of the plaintiff, on the verdict.

[NOTE. The defendants then sued out a writ of error, and the supreme court affirmed the judgment in an opinion by Mr. Justice Story, who said that the deed of 1791 passed a legal title to Harmer, which became consummated when his grantor obtained a patent from the United States in 1794. The mother could not, as next friend, authorize any release to be taken during the minority of her children which would bind them. As Dr. Drake had already been used by the defendants as a witness, it was proper to put his book in evidence to explain, qualify, or control his testimony. The plat was evidence, as it had been used by the original proprietor of the whole city, and was recognized by the corporate authorities in making their surveys. It was the best proof obtainable, although not conclusive. 7 Pet. (32 U. S.) 554. See, also, Case No. 6,075.]

HARMISON (UNITED STATES v.). See Case No. 15,308.

## Case No. 6,077.

### In re HARMON.

[See Case No. 6,078.]

## Case No. 6,078.

### In re HARMON.

[10 Chi. Leg. News, 22; 6 Am. Law Rec. 196.]

Circuit Court, N. D. Ohio. 1877.

On exceptions to petition in involuntary bankruptcy [in the matter of Gilbert Harmon].

Before WELKER, District Judge.

Held, 1. That it is not necessary in the petition to allege that the debts of the petitioners are unsecured debts, when it is alleged that they are provable debts.

2. That the depositions in support of the petition in reference to the debts of the petitioners, must show that they were unsecured debts, as well as otherwise definitely describe them.

Exceptions overruled as to the petition, sustained as to proof of debts, and leave given to petitioners to amend the proof of debts.

HARMON (DICKEY v.). See Case No. 3,894.

## Case No. 6,079.

### HARMON et al. v. JAMESSON.

[1 Cranch, C. C. 288.] [1]

Circuit Court, District of Columbia. March Term, 1806.

#### BANKRUPTCY—ATTACHING CREDITOR.

Under the bankrupt law, an attaching creditor was entitled to only a ratable part of his debt, with the other creditors; and that part was to be ascertained by the assignees, under the direction of commissioners.

In bankruptcy.

CRANCH, Chief Judge. Sacket, Doolittle, Allison, and others, creditors of Harmon & Davis, attached the money of the bankrupts, before their bankruptcy, in the hands of Jamesson. During the pendency of these attachments, Harmon & Davis became bankrupts, and a commission issued, upon which they have been discharged, and a dividend of 10 per cent. has been made. The defendant, Jamesson, by his answer, admitted $867 of the effects of Harmon & Davis to be in his hands, ready to be paid as the court should order. This money has been brought into court, and the question is, whether it shall be decreed to be paid over to the assignees of Harmon & Davis, to be distributed according to the bankrupt law, or whether this court will decree to each of the attaching creditors. "a ratable part of his debt, with the other creditors of the bankrupt," who have proved their debts under the commission, and received their dividend of 10 per cent. This question depends upon the construction of the 31st section of the bankrupt law of 1800 (2 Stat. 30), which is in these words: "That in the distribution of the bankrupt's effects, there shall be paid to every one of the creditors, a portion-rate, according to the amount of their respective debts, so that every creditor having security for his debt by judgment, statute, recognizance, or specialty, or having an attachment under any of the laws of the individual states, or of the United States, on the estate of such

[1] [Reported by Hon. William Cranch, Chief Judge.]